[Cite as *State v. Benton*, 2026-Ohio-2865.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

ROOSEVELT BENTON

    Appellant

C.A. No.     25CA012241

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    23CR110030

DECISION AND JOURNAL ENTRY

Dated: July 27, 2026

SUTTON, Judge.

{¶1}    Defendant-Appellant Roosevelt Benton appeals the judgment of the Lorain County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2}    This appeal arises from the November 2, 2023 shooting death of N.T. N.T. drove his girlfriend's gray Kia Soul to a shopping center in Elyria with the intention of selling marijuana. While N.T. usually sold marijuana only to people he knew, this time he was meeting with people he did not know and had arranged to meet them in a public area instead of them coming to his residence. N.T.'s brother Tyler, who arrived at the shopping center in a separate vehicle to do some shopping at Walmart, was also present in the shopping center parking lot. N.T. had called Tyler and asked him to come to where he was parked. When Tyler arrived, N.T. was in a dark colored sedan. N.T. eventually emerged from the back seat of the sedan, walked up to Tyler and

asked him for a marijuana "vape." Tyler gave him the vape. The windows of the sedan were dark, but Tyler observed a passenger and a driver. N.T. went back into the black sedan, and as N.T. re-emerged from the rear passenger door of the vehicle, Tyler was able to see the driver of the vehicle. Tyler then observed the driver shoot N.T. from inside the vehicle as N.T. was shutting the door of the vehicle.

{¶3} After the shooting, the black sedan fled the parking lot. Tyler called 911, and N.T. called his girlfriend. Using N.T.'s phone, Tyler informed N.T.'s girlfriend that N.T. had been shot. N.T. then told his girlfriend he loved her. N.T.'s girlfriend and her mother arrived on the scene and police and firefighters arrived on the scene shortly thereafter. It appeared that N.T. had been shot in the abdomen, there was no exit wound, and N.T. appeared to be bleeding internally. N.T. was treated at the scene, transported to a hospital by ambulance and then life-flighted by helicopter to a Level 1 trauma center in Cleveland. N.T. later died from the gunshot wound.

{¶4} Detective Joanna Catalano with the Elyria Police Department arrived on the scene at the shopping center. Detective Catalano observed that N.T. had a small red folding knife on his person, which was closed and clipped to his pants pocket. No other weapons were found at the scene.

{¶5} Police learned a black sedan was involved and obtained video surveillance of the vehicle from nearby businesses. Using license plate reading technology, police determined the vehicle was registered to Mr. Benton. Police went to Mr. Benton's address in Oberlin and observed a black Honda Accord backed into the driveway of the residence. Police maintained surveillance to make sure the vehicle did not leave and obtained a search warrant. Mr. Benton was located in the residence in his bedroom. Eventually, officers located a Stoeger 9mm semiautomatic pistol in the bedroom closet, which had a loaded magazine inserted. Officers also found a Luger Blazer

9mm spent shell casing on the floor of the closet and a box of 9mm ammunition in the bedroom. Mr. Benton's DNA, found on the gun and ballistics tests, showed the bullet that killed N.T. was fired from that gun.

{¶6} The Honda Accord was towed to the Elyria Police Department for processing. In the vehicle, officers found identification documents for Mr. Benton, a plastic baggie with marijuana remnants, a Blazer Luger 9mm cartridge underneath the floor mat on the driver's side of the vehicle, and a magazine loader in the center console.

{¶7} A Lorain County Grand Jury indicted Mr. Benton on seven counts: (1) murder, in violation of R.C. 2903.02(B), an unclassified felony; (2) felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree; (3) murder, in violation of R.C. 2903.02(B), an unclassified felony; (4) felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree; (5) improper handling firearms in a motor vehicle, in violation of R.C. 2923.16(A), a felony of the fourth degree; (6) improper handling firearms in a motor vehicle, in violation of R.C. 2923.16(B), a felony of the fourth degree; and (7) carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), a felony of the fourth degree. The murder and felonious assault counts each carried firearm specifications in violation of R.C. 2941.145(A) and R.C. 2941.146(A).

{¶8} Mr. Benton pleaded not guilty to the indictment, and the matter proceeded to a jury trial. Mr. Benton filed a notice of intent to assert self-defense and then filed a supplemental notice of his intent to assert defense of another, M.R. At trial, Mr. Benton testified that N.T. had pulled a red knife out of his pocket, opened the knife, and attempted to attack M.R. Mr. Benton testified he then shot N.T. in defense of M.R. Mr. Benton testified he believed N.T. was robbing him. Mr. Benton further testified that N.T. fell out of the car after he was shot and the knife in his hand fell

with him.  M.R. did not testify at the trial, asserting his right under the Fifth Amendment to the United States Constitution to not be compelled to testify against himself.

{¶9}    The trial court's instructions to the jury included an instruction on "defense of another."  The jury found Mr. Benton guilty on all counts and specifications, and the trial court sentenced Mr. Benton to a prison term of twenty-six years to life.

{¶10}  Mr. Benton has appealed, raising five assignments of error for our review.  To facilitate our analysis, we will consider some assignments of error out of order.

II.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN PROHIBITING CROSS EXAMINATION REGARDING PENDING CRIMINAL CONDUCT RELEVANT TO TRUTHFULNESS.**

{¶11}  Mr. Benton argues in his first assignment of error that the trial court erred when it disallowed cross-examination of N.T.'s brother Tyler concerning allegations of criminal conduct on the part of Tyler that had not yet resulted in convictions.  Mr. Benton argues this line of questioning was proper impeachment evidence under the Ohio Rules of Evidence.  The allegations with which Mr. Benton sought to impeach Tyler were that Tyler had engaged in conduct that constituted obstruction of justice and tampering with evidence in an unrelated case.  At the time of Mr. Benton's trial, Tyler had not yet been convicted but was facing criminal charges as one case had been bound over to the grand jury and another case was pending in municipal court.

{¶12}  Mr. Benton argued he wanted to impeach Tyler with these pending charges because he asserted Tyler had tampered with the scene *in this case* by removing marijuana from N.T.'s pocket, removing N.T.'s phone from the scene, which was never recovered, and by moving the Kia Soul to a different parking spot in the shopping center parking lot.  Mr. Benton further

theorized that Tyler may have folded N.T.'s knife and clipped it back into N.T.'s pocket before police arrived, an act which Tyler denied. Tyler admitted at trial that he picked up marijuana that had fallen to the ground but denied he removed the marijuana from N.T.'s pocket. Tyler also admitted he had two phones in his hand after the shooting. Tyler further testified he may have moved the Kia Soul.

{¶13} Evid.R. 609 provides that the credibility of a witness may be attacked with evidence that the witness has been convicted of a crime. In a sidebar discussion with counsel prior to Tyler's testimony, the trial court stated, "preliminarily, I will say only the convictions, I think, will be appropriate under the Rules of Evidence." Mr. Benton now argues for the first time on appeal that Evid.R. 608(B) applied to allow inquiry into Tyler's criminal charges that had not yet resulted in convictions. Evid.R. 608(B) provides that specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime as provided in Evid.R. 609, may be inquired into on cross-examination of the witness, but also provides that the witness does not waive any privilege against self-incrimination by testifying.

{¶14} At trial, Mr. Benton's counsel did not specifically argue the applicability of Evid.R. 608(B). "[A] defendant's failure to raise an issue at trial forfeits all but plain error on review." *State v. Drain*, 2022-Ohio-3697, ¶ 51. However, when a party fails to set forth a plain error argument in his merit brief, this Court will not create a plain error argument on his behalf. *See State v. Hairston*, 2006-Ohio-4925, ¶ 11 (9th Dist.).

{¶15} Upon review, we cannot say the trial court erred when it disallowed impeachment of Tyler using pending criminal charges. Accordingly, Mr. Benton's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN PERMITTING THE STATE TO ASK LEADING QUESTIONS OF [T.T.].**

{¶16} Mr. Benton argues in his second assignment of error the trial court erred by allowing the State to ask a witness named T.T. leading questions. Evid.R. 611(C) provides:

> Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

{¶17} Defense counsel objected when the State indicated its intent to ask leading questions of T.T. The State argued leading questions were proper because T.T. identified with Mr. Benton. The trial court stated it needed to hear the testimony establishing the relationship between Mr. Benton and T.T. before allowing leading questions.

{¶18} The State then established that T.T. was a friend of Mr. Benton's since childhood and they went to school and played sports together. T.T. also testified that he had been in contact with Mr. Benton since the November 2, 2023 shooting and that T.T. had sent Mr. Benton money since that date. The trial court granted the State's request to ask leading questions.

{¶19} "The determination of whether a witness is hostile or adverse is entrusted to the sound discretion of the trial court." *State v. Rutkowski*, 1995 WL 324085, *2 (9th Dist. May 31, 1995). Consequently, we "review a trial court's application of [Evid.R. 611(C)] for an abuse of discretion." *State v. McKelton*, 2016-Ohio-5735, ¶ 150. *See, also*, *State v. Wilson*, 1997 WL 164304, *7 (9th Dist. Apr. 2, 1997) ("The trial court has discretion to permit the [S]tate to ask leading questions of its own witnesses."). An abuse of discretion indicates that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶20} After the trial court allowed leading questions, T.T. admitted that he might have told Mr. Benton that he would do whatever he could to help him and that he did not want to testify. T.T. testified that he was "forced" to testify and did not volunteer to testify. This testimony further established that T.T. was a witness who identified with Mr. Benton.

{¶21} Upon review, we cannot state the trial court abused its discretion in determining that T.T. identified with an adverse party and allowing the State to use leading questions when examining him. Accordingly, Mr. Benton's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN PERMITTING THE STATE TO IMPEACH ITS OWN WITNESS, [T.T.].**

{¶22} Mr. Benton argues in his third assignment of error the trial court erred in allowing the State to impeach T.T. with prior inconsistent statements by T.T. in the form of a text exchange between T.T. and T.T.'s friend, M.M. The State argues that it did not attempt to impeach T.T. but attempted to lead T.T or develop his testimony concerning whether he was aware of an alleged plan by Mr. Benton and M.R. to commit a robbery.

{¶23} Evid.R. 607(A) provides in part that "[t]he credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage."

{¶24} Impeaching a witness involves "calling into question the witness's veracity." *State v. Darkenwald*, 2004-Ohio-2693, ¶ 17 (8th Dist.). Here, the State did not try to impeach T.T. The State tried to elicit testimony from T.T., through the use of leading questions, that he was aware of an alleged plan by Mr. Benton and M.R. to commit a robbery. The State attempted to get him to admit that he was aware of such a plan using a series of text messages between T.T. and his

friend, M.M. When shown the text messages, T.T. could recall sending "[s]ome of them," but was evasive and non-responsive when asked if he was aware of Mr. Benton's and M.R.'s plan to commit a robbery the day of the shooting. T.T. denied he was aware of such plan but then admitted he had heard about an alleged robbery plan from a third party. This case is similar to *Darkenwald*. In *Darkenwald,* the defendant's daughter was called by the State as a witness, but she was evasive and uncooperative. *Darkenwald* at ¶ 22. When the witness stated she could not recall where the victim and her mother were standing, the State attempted to refresh her recollection by asking her if she recalled telling the police the victim was standing by the rear bumper of his car. *Id.* at ¶ 24. After a sidebar with counsel, the trial court allowed the State to use the daughter's statement to police when questioning her. *Id.* at ¶ 25. On appeal, the Eight District Court of Appeals stated that the State was not impeaching the daughter but rather attempting to develop her testimony through leading questions. *Id.* at ¶ 26. Like here, the witness in *Darkenwald* was being evasive and uncooperative, and refused to recall pertinent facts she had made in her earlier statements. *Id.* at ¶ 27.

{¶25} This case is also similar to *State v. Burroughs*, 1999 WL 1243136 (7th Dist. Dec. 16, 1999). In *Burrough*s, the defendant's girlfriend was called as a witness by the State. The witness not only identified with the defendant because she was his girlfriend and the mother of his child, she was a hostile witness because she indicated that she did not want to be on the stand testifying. *Id.* at * 3. While she testified that she recalled making a statement to police, the witness could not recall everything in the statement. *Id.* The State, over defense counsel's objection, continued to cross-examine the witness using her previous statement. On appeal, the Seventh District Court of Appeals stated, "our review of the record on the whole indicates that the prosecution was unable to develop any material testimony from [the witness], whether due to

sincere inability to recall her prior account or due to the fact that she was uncooperative, and sought 'cross examination' as a means to develop her testimony." *Id.*

{¶26} Here, the State was asking leading questions concerning the text exchange between T.T. and M.M. to ascertain whether T.T. was aware of an alleged robbery plan on the part of Mr. Benton and M.R. The State was not impeaching T.T. with a prior inconsistent statement. It was trying to develop T.T.'s testimony about an alleged planned robbery.

{¶27} Accordingly, Mr. Benton's third assignment of error is overruled.

### ASSIGNMENT OF ERROR V

**THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE OFFENSES BEYOND A REASONABLE DOUBT.**

{¶28} In his fifth assignment of error, Mr. Benton argues his conviction is based on insufficient evidence. Specifically, Mr. Benton argues the State failed to prove he was not acting in defense of M.R. when he shot N.T.

{¶29} R.C. 2901.05(B)(1) provides that a person is allowed to act in self-defense or defense of another. With respect to Mr. Benton's sufficiency challenge, we conclude it is misplaced in light of his focus on self-defense/defense of another. *See State v. Pursley*, 2025-Ohio-530, ¶ 5 (9th Dist.). Self-defense and defense of another remain affirmative defenses in Ohio, and an affirmative defense is not an element of a crime. *See State v. Messenger*, 2022-Ohio-4562, ¶ 24. A defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense or in defense of another. *Pursley* at ¶ 5. Accordingly, a trial court judge who has instructed a jury on self-defense or defense of another has determined the defendant put forth sufficient evidence of self-defense. *Id.* Meanwhile, a finding of guilt means that, in the eyes of the jury, the State met

its burden of persuasion that the defendant was not acting in self-defense or defense of another. *Id.* "[T]he sufficiency-of-the-evidence standard of review applies to [the defendant's] burden of production and a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *Id.*, quoting *Messenger* at ¶ 26. Given that Mr. Benton's argument is focused on defense of another, a challenge to the sufficiency of the evidence is not appropriate. *See id.*, citing *Messenger* at ¶ 26-27; *see also State v. Susanek*, 2024-Ohio-5298, ¶ 22 (9th Dist.) "The State's 'burden of disproving the defendant's [defense of another] claim beyond a reasonable doubt is subject to a manifest-weight review on appeal,' not a sufficiency review." *Susanek* at ¶ 22, quoting *Messenger*. at ¶ 27.

{¶30} Accordingly, Mr. Benton's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

**[MR. BENTON'S] CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶31} In his fourth assignment of error Mr. Benton argues his convictions are against the manifest weight of the evidence. As to manifest weight of the evidence this Court has previously stated:

> [i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v.*

*Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id. See also State v. Reillo*, Slip Opinion No. 2026-Ohio-2701, ¶ 28.

**{¶32}** Mr. Benton argues the evidence showed Tyler tampered with the scene prior to the arrival of law enforcement, that N.T. had a knife on him, that Tyler's testimony was not credible, and that Tyler was the only individual who implicated Mr. Benton. However, Mr. Benton admitted he shot N.T. That fact is not in dispute.

**{¶33}** Mr. Benton asserts that he acted in defense of M.R. The elements of self-defense or the defense of another are: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he or another was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of deadly force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. *See State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). In addition, a person has no duty to retreat before using force in defense of another if that person is in a place in which the person lawfully has a right to be. R.C. 2901.09(B). "To carry its burden of persuasion, the State need only disprove one of the foregoing elements beyond a reasonable doubt." *State v. Fleckenstein*, 2023-Ohio-4347, ¶ 24 (9th Dist.).

**{¶34}** N.T.'s brother Tyler testified that N.T. was outside of the black sedan shutting the door when N.T. was shot. Another of the State's witnesses, R.K., testified to a version of events

that was similar to the version to which Tyler testified. R.K., who did not know any of the parties involved, was in the parking lot sitting in his truck when the shooting occurred. R.K. testified that N.T. was outside of the black sedan in between the black sedan and the Kia Soul a couple of feet from the black sedan walking toward the black sedan when he was shot. R.K. did not see a knife in N.T.'s hand. This testimony contradicts Mr. Benton's testimony that N.T. was leaning into the vehicle attacking M.R. with a knife when Mr. Benton shot N.T. In addition, there was no blood inside the black sedan.

{¶35} Even if Mr. Benton argues he was not at fault for creating the situation leading to the shooting, and that he had no duty to retreat, the testimony of Tyler and R.K was that at the time the shot was fired, Mr. Benton and M.R. were not in imminent danger. Mr. Benton admitted at trial that M.R. did not mention a knife to police, and no one but Mr. Benton testified that N.T. had a knife in his hand.

{¶36} The jury obviously found the testimony of Tyler and R.K. to be credible, because they found Mr. Benton guilty, and did not find Mr. Benton's testimony to be credible. As we have stated, we will not overturn a conviction on a manifest weight challenge only because the trier-of-fact found the testimony of certain witnesses to be credible. *Gannon* at ¶ 20.

{¶37} We have reviewed the record in this matter and cannot conclude that this is the exceptional case where the evidence weighs heavily against the verdict. Accordingly, Mr. Benton's fourth assignment of error first assignment is overruled.

III.

{¶38} For the forgoing reasons, Mr. Benton's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, J.
CONCURS.

FLAGG LANZINGER, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

KIMBERLY KENDALL CORRAL, Attorney at Law, for Appellant.

ANTHONY CILLO, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, ,for Appellee.